[Nos. 61537-8-I; 61723-1-I.   Division One.   November 2, 2009.]

NICHOLAS ENSLEY, *Respondent*, v. CLIFFORD PITCHER ET AL., *Petitioners*.

*Jennifer L. Brown, Maggie E. Diefenbach,* and *Melissa O. White* (of *Cozen O'Connor*), for petitioners.

*Aaron L. Adee* (of *The Adee Law Firm, PLLC*) and *Larry L. Setchell* (of *Helsell Fetterman, LLP*), for respondent.

¶1 APPELWICK, J. — Ensley sued Pitcher, a bartender, claiming he negligently overserved alcohol to a woman who crashed her car, causing serious injuries to Ensley. Pitcher asked the trial court to dismiss on the grounds of res judicata and collateral estoppel. Summary judgment had been granted in a separate lawsuit, dismissing Ensley's identical negligence claim against Pitcher's employer. The trial court denied Pitcher's motion to dismiss and certified a question for this court on discretionary review: whether Pitcher's alleged admissions to a third party, which had been excluded as hearsay in the suit against the employer, would be admissible as admissions of a party opponent, therefore supporting this lawsuit, because there was not "substantially the same evidence." Because Ensley's suit against Pitcher is barred by res judicata, we remand for dismissal with prejudice.

¶2 Ensley also filed a motion for discretionary review, asking the court to find that the trial court erred in denying his motion to amend the complaint to add the owner of Red Onion as a defendant, and add a claim of vicarious liability against him. Because the suit against Pitcher is barred by res judicata, Ensley's motion is moot.

## FACTS

¶3 Nicholas Ensley suffered serious injuries when Rebecca Humphries crashed her car into two parked cars after an evening of drinking. Ensley first brought suit against the owner of Red Onion Tavern, Humphries, and two other businesses that served alcohol to Humphries the night of the collision. Red Onion moved for summary judgment based on the evidence that Humphries was at Red Onion for less than 30 minutes, she consumed less than one alcoholic drink at that location, others present at Red Onion observed that Humphries was not apparently intoxicated while at Red Onion, and she consumed several additional drinks after leaving Red Onion and before the accident.[1]

¶4 Ensley opposed summary judgment, relying in part on the deposition of Daniel Ahern, in which Ahern recalled a conversation he had with Clifford Pitcher, the bartender at Red Onion. Ahern recalled that Pitcher acknowledged that Humphries had kind of glassy eyes and that he should not have served her. Ahern testified:

Q   Since the crash who have you talked to about the facts of that night?

A   I've discussed it with Chris, Stacy, Cliff the owner, and Cliff the bartender at the Red Onion.

Q   What did you and Cliff at the Red Onion discuss?

A   I was just asking -- I just kind of wanted to get a sense of what he saw from that -- from that night, and just if -- how everybody looked. And I just kind of wanted to get -- just to get a sense of that.

Q   When did this conversation take place?

A   A couple days after the accident.

---

[1] Under Washington law, a patron's intoxication must be apparent to a commercial host in order for a third party injured in a drunk driving accident to prevail on an overservice claim. *Barrett v. Lucky Seven Saloon, Inc.*, 152 Wn.2d 259, 272-74, 96 P.3d 386 (2004).

Q   At the Red Onion?

A   Yes.

Q   Were you drinking at the time?

A   No. I just stopped in after work and was on my way home.

Q   What did Cliff the bartender at Red Onion tell you?

A   He said Rebecca looked a little glassy-eyed, and I don't remember what he said about Nick.

Q   From your -- well, do you remember anything else about that conversation?

A   No.

Q   Did he say how you looked?

A   He said I looked a little glassy, but not enough that he wouldn't serve me a beer.

Q   Did he say that Rebecca looked in a condition where he wouldn't serve her a beer?

A   He said she looked a little more glassier than us, but . . . (Pause.)

Q   So --

A   Yes.

Q   -- did he say that Rebecca was in a condition where he would not have served her a beer?

A   Yes. I believe so, yes.

¶5 Red Onion moved to strike Ahern's testimony as hearsay. Ensley argued that Pitcher was a speaking agent for Red Onion, and thus the testimony was admissible as an admission of a party opponent. The trial court granted the motion to strike Ahern's testimony as inadmissible hearsay, granted partial summary judgment dismissing Ensley's claims against Red Onion, and denied reconsideration.

¶6 On June 18, 2007, Ensley asked the court for entry of final judgment of the court's order granting Red Onion's motion for summary judgment. Red Onion opposed entry of final judgment, because Ensley had already sought discretionary review of the order granting Red Onion's motion for summary judgment. A commissioner denied Ensley's mo-

tion for discretionary review on June 25, 2007.[2] On July 13, 2007, the trial court denied Ensley's motion for entry of final judgment.[3]

¶7 On November 21, 2007, Ensley asked the trial court to allow him to amend his complaint to include a claim against Pitcher individually. The motion was filed well into discovery and Ensley had known of Pitcher's alleged statements to Ahern since at least February 2007. The trial court denied the motion to amend, noting that it would not be fair to the defendants to delay the case so close to the scheduled trial.

¶8 Ensley then filed a new lawsuit, the subject of this appeal, naming Pitcher as the defendant, for negligent service of alcohol to Humphries at the Red Onion. Pitcher moved to dismiss, arguing that summary judgment in favor of the owner of Red Onion in the first lawsuit barred the new lawsuit. The trial court denied the motion to dismiss. The order stated that the plaintiff's claims against Pitcher are neither res judicata nor barred by collateral estoppel.[4] The court also denied Pitcher's motion for reconsideration. The trial court then entered a certification pursuant to RAP 2.3(b)(4), with a statement explaining the reasons for certification:

> The threshold issue in this case is the potential application of res judicata and/or collateral estoppel where the scope of

---

[2] The commissioner reasoned that Ensley failed to establish that it was an obvious or probable error for the trial court to conclude that Ensley had not met his burden of demonstrating that Pitcher, a part-time bartender, was a speaking agent for Red Onion. Because Pitcher was not a named defendant in the suit against the tavern owners, Ahern's deposition testimony of what Pitcher said was not admissible as an admission of party opponent. Nor was the statement a state of mind hearsay exception under ER 803(a)(3). These are issues that Ensley will have the opportunity to argue in an appeal of that case.

[3] Final judgment has since been entered, and Ensley filed a notice of appeal on April 24, 2009.

[4] Ensley asserts that the trial court granted the motion to strike Pitcher's res judicata and collateral estoppel affirmative defenses, and that Pitcher has not assigned error to this order. However, the motion to dismiss, to which Pitcher assigned error, and the court's statement supporting certification expressly concern the application of res judicata and collateral estoppel to the overservice claim against Pitcher.

evidence presented in successive lawsuits may potentially differ. At issue are significant public policy issues critical to a defendant's right to finality following a dismissal and a plaintiff's right to present a case. There are substantial grounds for differences of opinion on these important issues, as reflected in the arguments and case law submitted by the parties in this case. This is an issue of first impression in Washington. Immediate interlocutory review by the Court of Appeals will allow for immediate dismissal of this action, without the need for potentially unnecessary development of this case.

The trial court also certified its order denying defendant's motion to dismiss. Based on the certification, a commissioner granted review.

¶9 Meanwhile, Ensley filed a motion to amend the complaint in this case to add the owner of Red Onion as a defendant and to add a claim of vicarious liability against him. The trial court denied Ensley's motion to amend the complaint and his motion to reconsider. Ensley filed a motion for discretionary review of the court's denial of his motion to amend the complaint, which a commissioner consolidated with our review of the order denying the defendant's motion to dismiss, and passed the motion to the panel deciding Pitcher's motion on the merits.[5]

## DISCUSSION

### I. Res Judicata

¶10 "Filing two separate lawsuits based on the same event—claim splitting—is precluded in Washington." *Landry v. Luscher*, 95 Wn. App. 779, 780, 976 P.2d 1274

---

[5] Pitcher filed a motion in this court to strike Ensley's designation of clerk's papers, contending they are not needed to review the issues presented to the appellate court in accordance with RAP 9.6(a). The commissioner's ruling by notation on July 22, 2008, made it clear that no further briefing would be permitted on the issues related to the amendment of the complaint. Ensley has not provided further briefing, with the exception of a short procedural explanation in his response brief. The clerk's papers in case no. 61723-1-I (Ensley's motion for discretionary review of his motion to amend the complaint) are largely duplicative of the clerk's papers in case no. 61537-8-I. We decline to rule on the motion to strike.

(1999). " 'The doctrine of *res judicata* rests upon the ground that a matter which has been litigated, or on which there has been an opportunity to litigate, in a former action in a court of competent jurisdiction, should not be permitted to be litigated again. It puts an end to strife, produces certainty as to individual rights, and gives dignity and respect to judicial proceedings.' " *Marino Prop. Co. v. Port Comm'rs of Port of Seattle*, 97 Wn.2d 307, 312, 644 P.2d 1181 (1982) (quoting *Walsh v. Wolff*, 32 Wn.2d 285, 287, 201 P.2d 215 (1949)). Res judicata bars such claim splitting if the claims are based upon the same cause of action. *See* 14A KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 35.33, at 479 (1st ed. 2007) (distinguishing collateral estoppel's requirement that the issue be actually litigated from res judicata's more lenient standard where issues that could have been litigated and resolved are barred). Whether res judicata bars an action is a question of law we review de novo. *Kuhlman v. Thomas*, 78 Wn. App. 115, 120, 897 P.2d 365 (1995); *Atl. Cas. Ins. Co. v. Or. Mut. Ins. Co.*, 137 Wn. App. 296, 302, 153 P.3d 211 (2007).

¶11 The threshold requirement of res judicata is a valid and final judgment on the merits in a prior suit.[6] *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 865, 93 P.3d 108 (2004). We have held that summary judgment can be a final judgment on the merits with the same preclusive effect as a full trial and is therefore a valid basis for application of res judicata. *DeYoung v. Cenex Ltd.*, 100 Wn. App. 885, 892, 1 P.3d 587 (2000).

¶12 Ensley contends that the summary judgment granted in favor of Red Onion in the suit against the tavern owners was not a final judgment, because the trial court had not entered the requisite order of finality pursuant to CR 54(b).[7] However, the finality requirement for preclusion[8] is distinct from the finality requirement for purposes of ap-

---

[6] Ensley does not dispute that the summary judgment motion was valid or on the merits.

[7] CR 54(b) provides a specific procedure for entry of final judgment in suits with multiple claims or multiple parties:

peal. *See Cunningham v. State*, 61 Wn. App. 562, 566-67, 811 P.2d 225 (1991); 18A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4432, at 52-60 (2d ed. 2002). In *Cunningham*, we addressed the definition of "finality" for collateral estoppel purposes by looking to the *Restatement (Second) of Judgments* (1982) and other federal authority. We do the same here to address the definition of "finality" for res judicata.

¶13 The *Restatement (Second) of Judgments* states, "The rules of res judicata are applicable only when a final judgment is rendered." RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982). The comments contrast this finality require-ment with the finality requirement of appellate review and conclude they are quite similar. *Id.* cmt. b (explaining that the definition of "finality" for res judicata resembles the traditional concept of finality for appellate review: "when res judicata is in question a judgment will ordinarily be considered final in respect to a claim (or a separable part of a claim, see comment e below) if it is not tentative, provi-sional, or contingent and represents the completion of all steps in the adjudication of the claim by the court"). Comment e provides for the application of res judicata in multiparty, multiclaim litigation, stating that "[a] judg-ment may be final in a res judicata sense as to a part of an

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination in the judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment. The findings may be made at the time of entry of judgment or thereafter on the court's own motion or on motion of any party. In the absence of such findings, determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

[8] While both issue and claim preclusion require finality, it is widely recognized that the finality requirement is less stringent for issue preclusion than for claim preclusion. 18A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4434, at 110 n.1 (2d ed. 2002).

action although the litigation continues as to the rest." *Id.* cmt. e. Undoubtedly, CR 54(b) provides the correct procedure for entering final judgment as to a claim or party in this circumstance. "Summary judgment as to part of an action may be made final under Civil Rule 54(b) . . . and then is final for preclusion purposes as well as appeal purposes." 18A WRIGHT, *supra*, § 4444, at 297-99. However, "[t]here also may be circumstances in which expanded modern views of finality warrant preclusion on the ground that there is no apparent reason to anticipate reconsideration and that the alternative of denying preclusion would entail substantial costs." *Id.* § 4444, at 298-99.

¶14 The record here overwhelmingly satisfies the finality requirement, analyzed under the more modern view articulated in *Federal Practice and Procedure,* as well as under the traditional factors as articulated in *Restatement (Second) of Judgments.* The trial court granted partial summary judgment dismissing all of the claims against Red Onion from the suit. The parties had a full and fair opportunity to litigate Red Onion's liability. The trial court then heard and denied reconsideration. Ensley filed for discretionary review of this decision, and we denied review, finding neither obvious nor probable error. Further, the trial court entertained and denied Ensley's motion to amend his complaint to include Pitcher. The addition of Pitcher to the lawsuit may have provided a basis for admitting Ahern's deposition testimony and reversing the summary judgment motion, but the court's decision on the motion to amend the complaint reinforced its decision that Red Onion had been dismissed. While the record does not include an entry of final judgment under CR 54(b) as to the summary judgment dismissing Red Onion, there are no other indicia in the record that the summary judgment decision was not final as a practical matter. Further, by the time we considered this appeal, final judgment had been

entered in the suit against Red Onion and the other tavern owners.[9]

¶15 Therefore, the entry of summary judgment in favor of Red Onion and dismissal with prejudice of Ensley's claims against Red Onion in the suit against the tavern owners is a final judgment on the merits, allowing application of res judicata.

¶16 Because res judicata ensures the finality of judgments and eliminates duplicative litigation, dismissal on res judicata grounds is appropriate where the subsequent action is identical with a prior action in four respects: "(1) persons and parties; (2) causes of action; (3) subject matter; and (4) the quality of the persons for or against whom the claim is made." *Landry*, 95 Wn. App. at 783. The party asserting the defense of res judicata bears the burden of proof. *Hisle*, 151 Wn.2d at 865.

¶17 Pitcher asserts that the trial court erred in its analysis of the same claim or cause of action element of res judicata. In the certification of the issue for appeal, the trial court stated: "The threshold issue in this case is the potential application of res judicata and/or collateral estoppel where the scope of evidence presented in successive lawsuits may potentially differ."

## A.   Persons and Parties

¶18 Different defendants in separate suits are the same party for res judicata purposes as long as they are in privity. *Kuhlman*, 78 Wn. App. at 121. The employer/employee relationship is sufficient to establish privity. *Id.* at 121-22 (holding that where the ultimate issue of whether the employer had violated the plaintiff's rights turned on the propriety of its employees conduct, the parties must be viewed as sufficiently the same, "if not identical"); see also *Kuhlman*'s discussion of federal law therein. Pitcher and

---

[9] We take judicial notice of Ensley's appeal from final judgment in case no. 63407-1-I, where the correspondence file contains counsel's assurances of a final judgment, as well as the trial court documentation dismissing the last of the defendants from the suit against the tavern owners.

Red Onion are clearly in privity. Ensley could have sought to establish Pitcher's personal liability in the first suit. The fact that Ensley did not name Pitcher as a defendant does not defeat the identity of the parties where the employer's liability turns solely on vicarious liability.[10]

## B. Causes of Action

¶19 The determination whether the same causes of action are present includes consideration of (1) whether the rights or interests established in the prior judgment would be destroyed or impaired by the prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the suits involved infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Pederson v. Potter*, 103 Wn. App. 62, 72, 11 P.3d 833 (2000); *Landry*, 95 Wn. App. at 784. These four factors are analytical tools; it is not necessary that all four factors be present to bar the claim. *Kuhlman*, 78 Wn. App. at 122 ("there is no specific test for determining identity of causes of action"); Philip A. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 WASH. L. REV. 805, 816 (1985). Pitcher argues that the court's reliance on the "substantially the same evidence" criterion in denying Pitcher's motion to dismiss constitutes error.

¶20 The trial court's certification involves the "substantially the same evidence" consideration. The principle concern was the potential application of the preclusion doctrine where the "scope of evidence presented in successive lawsuits may potentially differ." The "substantially the same evidence" factor requires analysis of whether the evidence necessary to support each action is identical. *See Kuhlman*, 78 Wn. App. at 123 (in analyzing this factor, looking to "the evidence needed to support each action"). To prove an

---

[10] Neither party disputes that Red Onion would be vicariously liable for Pitcher's alleged overservice. Vicarious liability is established if the relationship is that of employer-employee, and the tort committed was within the scope of employment. *Kuehn v. White*, 24 Wn. App. 274, 277, 600 P.2d 679 (1979).

overservice claim, Ensley must prove that it was apparent to Pitcher that Humphries was intoxicated and that he served her in spite of her intoxication. *Barrett v. Lucky Seven Saloon, Inc.*, 152 Wn.2d 259, 273, 96 P.3d 386 (2004). Ensley's argument that Ahern's deposition testimony (containing Pitcher's statement to Ahern about Humphries's appearance) would be admissible in the second suit against Pitcher is of no moment. Whether some evidence inadmissible in the first suit may be admissible in the second suit does not alter Ensley's burden to produce evidence that Pitcher had notice of Humphries's apparent intoxication when he served her. *Kuhlman*, 78 Wn. App. at 123. The "substantially the same evidence" factor is satisfied.

¶21 Further, consideration of the other factors suggests that Ensley's second suit is barred by res judicata. The two suits arise out of the same transactional nucleus of facts. Examination of the complaints filed in each of the two suits reveals that Ensley told the same story: that Humphries was apparently intoxicated at the Red Onion but that Pitcher served her nevertheless. The claim against Red Onion in the first suit is based solely on vicarious liability for the alleged overservice of Humphries by Pitcher. Red Onion's rights and interests established in the prior summary judgment order—that it was not liable for overserving Humphries—could be destroyed by prosecution of the second action. Lastly, the suits involved infringement of the same right: the right to be protected from bars providing alcohol to persons apparently under the influence.

¶22 The identical nature of the claims, including the facts alleged in the complaints and the theories of the case argued, leave only one conclusion: that Ensley's negligent overservice claim against Pitcher is the same cause of action as Ensley's negligent overservice claim against Red Onion.

C. Subject Matter

¶23 The analysis of the first and second elements of res judicata demonstrates that the subject matter of the

first and second suits is identical. Pitcher correctly argues that the tort claim in the suit against the tavern owners was identical to the tort claim here; namely, whether Humphries appeared intoxicated at the time of Pitcher's service at Red Onion.[11] Ensley contends that the ultimate issue in the action against Red Onion was whether Red Onion was liable to Ensley, and that the ultimate issue in the action against Pitcher is whether Pitcher is liable to Ensley. Given that Ensley alleges negligent overservice by Pitcher in one suit and by Red Onion in the other suit, that Pitcher and Red Onion are jointly and severally liable, and that Red Onion is vicariously liable for Pitcher's negligent acts within the scope of his employment, the two suits concern the same subject matter. *See, e.g., id.* at 124 (finding the same subject matter even where the claims were different, because the basis of the claims was the plaintiff's alleged deprivation of a constitutional right and tortious harm resulting from false allegations).

### D. Quality of Persons For or Against Whom the Claim Is Made

¶24 The fourth element of res judicata simply requires a determination of which parties in the second suit are bound by the judgment in the first suit. *See* 14A KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 35.27, at 464 (1st ed. 2007) (explaining that the "identity and quality of parties" requirement is better understood as a determination of who is bound by the first judgment—all parties to the litigation plus all persons in privity with such parties).

¶25 *Restatement (Second) of Judgments* § 51 (1982) explains the preclusive effect of a judgment against a party

---

[11] Red Onion and Pitcher are jointly and severally liable for any injury caused by their alleged negligence. In Washington, " '[a]n employer and its employees are jointly and severally liable for the negligent acts of the employee in the scope of employment, and one damaged by such acts can sue both the employer and the employee or either separately.' " *Cordova v. Holwegner*, 93 Wn. App. 955, 962, 971 P.2d 531 (1999) (quoting *Orwick v. Fox*, 65 Wn. App. 71, 80, 828 P.2d 12 (1992)). Further, neither party disputes that Red Onion would be vicariously liable for Pitcher's alleged overservice.

where that party and another party have a relationship such that one of them is vicariously liable:

> If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other.
>
> (1) A judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct unless:
>
>> (a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or
>>
>> (b) The judgment in the first action was based on a defense that was personal to the defendant in the first action.

*See also Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 720, 658 P.2d 1230 (1983) (citing to *Restatement (Second) of Judgments* § 51 (1982) in its discussion of when a principal's liability may or may not be discharged based on judgment for the agent), *abrogated on other grounds by Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 756 P.2d 717 (1988).[12]

¶26 We hold that the claim of negligent overservice by Ensley against Pitcher is barred by res judicata.[13] Red Onion and Pitcher are in privity. This action is identical to

---

[12] Ensley also argues that res judicata does not apply, because Red Onion utilized a personal defense and only a valid judgment on the merits not based on a personal defense bars a subsequent action by the plaintiff against another responsible for the commission of a tort. Although not entirely clear from Ensley's briefing, it appears he argues that Red Onion's assertion that Ahern's testimony of Pitcher's statements about Humphries is hearsay is a personal defense. Ensley cites to no authority for the proposition that an evidentiary ruling is a personal defense, so we do not address it. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[13] We need not reach Pitcher's collateral estoppel argument. However, we note that collateral estoppel may not be applicable. Collateral estoppel prevents a relitigation of a particular issue in a later proceeding involving the same parties, even though the later proceedings involve a different claim or cause of action. *King*

the cause of action in the suit against the tavern owners, the subject matter of the two suits is identical, and all the parties in the second suit are bound by the judgment in the first suit.

## II. Ensley's Motion for Discretionary Review

¶27 Ensley contends that the trial court committed obvious error rendering further proceedings useless under RAP 2.3(b)(1) and/or committed probable error substantially altering the status quo or limiting his freedom to act under RAP 2.3(b)(2) when it denied his motion to amend the complaint to add Red Onion as a defendant.[14]

¶28 We deny Ensley's motion for discretionary review on this issue. Because Ensley's suit against Pitcher is barred by res judicata with or without Red Onion as a named defendant, the trial court's ruling was not error. Ensley's motion for discretionary review is moot.

¶29 We remand for dismissal of Ensley's suit against Pitcher with prejudice.

AGID and LAU, JJ., concur.

---

*v. City of Seattle*, 84 Wn.2d 239, 243, 525 P.2d 228 (1974). Here, the claim or cause of action is identical: negligent overservice.

[14] A commissioner referred Ensley's motion for discretionary review to the panel considering Pitcher's appeal on the merits and consolidated the two cases.